UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAGE GROWTH CAPITAL FUND 1, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CPR CONSTRUCTION CLEANING, LLC, an Arizona limited liability company; CPR CONSTRUCTION CLEANING USA, LLC, and Arizona limited liability company; PCB HOLDINGS, LLC d/b/a CPR CONSTRUCTION CLEANING, an Arizona limited liability company; JOSEPH PATRICK MAEZ, an individual; CORINA BURTON, and individual; and BRENDA BURTON, and individual,<br><br>Defendants. | Case No. 1:22-cv-00237-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Sage Growth's Motion to Enforce the Settlement Agreement (Dkt. 70) and Corina Burton's Motion to Strike (Dkt. 83). For the reasons set forth below, the Court will deny both motions.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

In 2022, Sage Growth filed its Complaint against CPR Construction Cleaning, Joseph Maez, and Corina Burton in state court. *State Court Complaint*, Dkt. 1-2. The Complaint alleged CPR applied for a loan from Sage Growth based on misrepresentations made by the defendants about the intended use of the funds and the financial state of the company. *Id.* It further alleges that after Sage Growth loaned CPR the $400,000, the defendants breached the loan agreement by failing to make a single payment due under the contract. *Id.* The defendants then removed the case to federal court. *Notice of Removal*, Dkt. 1. In late 2023, Sage Growth moved to amend the Complaint to add several additional defendants: Brenda Burton, CPR Construction Cleaning USA, LLC, and PCB Holdings—all of whom Sage Growth alleged were involved in a scheme to defraud Sage Growth. The Court granted that motion to amend in part, but deferred ruling on the issue of punitive damages.

Relevant here, is the parties conduct between the defendants' removal of the case to federal court and Sage Growth's motion to amend. After engaging in several months of discovery, the parties agreed to pause discovery to engage in settlement discussions. Defs. Ex. C, Dkt. 77-5. On April 13, 2023, Sage Growth sent a proposal to the defendants offering to settle this dispute for $1.075 million

with a payment schedule, stipulation of judgment for fraud, and a spring back clause. Defs. Ex. D, Dkt. 77-6. The proposal included several conditions of settlement which, if breached, would trigger default and the application of a $3.675 million stipulated judgment. *Id.* The defendants offered a counterproposal, which Sage Growth rejected. Defs. Exs. E & F, Dkts. 77-7 & 77-8. The parties continued these negotiations through April and most of May without reaching any agreement. Defs. Exs. G, H, I, J, Dkts. 77-9, 77-10, 77-11, 77-12.

On May 26, 2023, defense counsel advised that the defendants "had identified a source of funds in the amount of $700,000 which . . . would be wired to Sage on or before July 1, 2023." Defs. Ex. K, Dkt. 77-13. That email made clear that these funds would not be available "unless and until there is a written settlement between the parties" that the payment "is in full and complete satisfaction of all claims, known or unknown" between the parties. *Id.* On May 29, 2023, Sage Growth responded accepting the settlement terms for $800,000 with a $10,000 payment by the end of the month "to continue these discussions." Defs. Ex. L, Dkt. 77-14. On May 31, 2023, counsel had a call to discuss the terms of settlement, which was immediately followed up with an email from defense counsel memorializing the call. Defs. Ex. M, Dkt. 77-15. That email stated:

> In follow up to our telephone conference of a few moments ago, my clients authorized a resolution of this case in exchange for the payment of $800k

**MEMORANDUM DECISION AND ORDER - 3**

>(now $790k given the 10k payment made today) which payment will be made no later than July 1, 2023. As we discussed, this settlement will be embodied in a confidential settlement agreement which Sage will take the initial effort in drafting. This confidential settlement agreement will contemplate the dismissal with prejudice of the case (each party bearing their own costs and fees) within 5 business days of the settlement payment and will also contain the bankruptcy protections enforceable for a period of 91 days after the settlement payment as identified in Nicole's email of April 20, 2023 regarding a stipulation for judgment of fraud, affidavits from Patrick, Corina and Brenda confirming the stipulated judgment, and a spring back clause in the event of a voluntary bankruptcy by Patrick, Corina, and Brenda.

*Id.*

Shortly thereafter, Sage Growth circulated its initial draft of the written agreement on June 5, 2023. Defs. Ex. N, Dkt. 77-16. A week or so later, defense counsel responded with its edits to the agreement. Defs. Ex. O, Dkt. 77-17. Those edits included a few changes to the terms of the draft agreement, mainly to the bankruptcy provisions, as well as substantial edits to the affidavits related to the stipulated judgment. *Id.* Sage Growth, in turn, responded by rejecting any of the defendants' proposed changes. Defs. Ex. Q, Dkt. 77-19.

By June 30, 2023, it was clear that the parties would not be able to execute a signed agreement by the July 1, 2023 deadline. As such, Sage Growth offered to extend the payment deadline until August 1, 2023 upon a $50,000 payment from the defendants. Defs. Ex. T, Dkt. 22. The defendants accepted this offer. *Id.* A few weeks later, with the extended August 1, 2023 deadline looming, the defendants

MEMORANDUM DECISION AND ORDER - 4

requested a similar extension. Defs. Ex. V, Dkt. 23. Sage Growth agreed to the extension if the defendants also signed the settlement agreement. *Id.*

On August 4, 2023, Sage Growth agreed to modify the payment schedule upon immediate payment of $50,000 and a signed settlement agreement within 2 weeks. Defs. Ex. X, Dkt. 26. Two days later, CPR and PCB Holdings rejected the offer. Defs. Ex. Y, Dkt. 27. Sage Growth then made a final offer modifying the payment schedule. Defs. Ex. Z, Dkt. 28. It appears this modified payment offer expired on August 17, 2023. *Id.*

Following the breakdown of the agreement, Sage Growth filed a motion to amend its Complaint, including to join defendants Brenda Burton, PCB Holdings, and CPR USA as well as a claim for breach of the settlement agreement. *Motion to Amend*, Dkt. 47. The Court granted this motion and Sage Growth filed its Amended Complaint. *Order*, Dkt. 53; *Amended Complaint*, Dkt. 54. Soon thereafter, Sage Growth filed the present motion to enforce the settlement agreement. *Motion*, Dkt. 70. Brenda Burton, PCB Holdings, and Corina Burton all oppose the motion. CPR USA, CPR, and Joseph Patrick Maez all have had entries of default against them for various failures to respond. Dkts. 84 & 85. Relatedly, Corina Burton also filed a motion to strike a portion of Sage Growth's reply. *Motion to Strike*, Dkt. 83. The Court will resolve both motions now.

**MEMORANDUM DECISION AND ORDER - 5**

**LEGAL STANDARD**

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. However, the district court may enforce only complete settlement agreements." *Callie v. Near*, 829 F.2d 888, 891 (9th Cir. 1987) (citations omitted). Under Idaho law, "[a] settlement agreement 'stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally.'" *Seward v. Musick Auction, LLC*, 426 P.3d 1249, 1258 (Idaho 2017) (quoting *Vanderford Co., Inc. v. Knudson*, 249 P.3d 857, 865 (Idaho 2011)). "A contract must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to a certainty." *Unifund CCR, LLC v. Lowe*, 367 P.3d 145, 148 (2016). "Generally, the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of fact." *Shields & Co. v. Green*, 606 P.2d 983, 986 (Idaho 1980).

When, as here, there has been no evidentiary hearing, a "motion to enforce a settlement agreement is treated as a motion for summary judgment." *Brunobuilt, Inc. v. Strata, Inc.*, 457 P.3d 860, 868 (2020). Under this familiar standard, the plaintiff bears the initial burden of demonstrating the absence of a genuine dispute

MEMORANDUM DECISION AND ORDER - 6

as to any material fact. *See generally* Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact – that is, a fact 'that may affect the outcome of the case.'" *Id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine dispute. *Celotex*, 477 U.S. at 323.

## ANALYSIS

Before turning to the merits of Sage Growth's motion to enforce the settlement agreement, the Court must first briefly address Corina Burton's motion to strike.

### A.    Motion to Strike

MEMORANDUM DECISION AND ORDER - 7

Corina moves to strike an argument made by Sage Growth in its reply brief. She claims Sage Growth's argument that Corina's Third-Party Complaint admits she, and the other defendants, reached an enforceable agreement with Sage Growth introduces new facts and arguments not in its opening brief. *Motion to Strike*, Dkt. 83. Corina, however, does note that Sage Growth could not have made this argument in its opening motion as Corina's Third-Party Complaint was filed *after* Sage Growth's motion. That concession resolves this motion. The Court will not strike the argument, nor will it permit Corina to file a sur-reply. That said, the paragraphs cited by Sage Growth were pled in the alternative, so the Court will evaluate their persuasive value accordingly. Accordingly, Corina's motion to strike is denied.

### B.     Motion to Enforce Settlement Agreement

Sage Growth asks the Court to enforce the settlement agreement by entering a stipulated judgment for fraud against Corina, Patrick, Brenda, CPR, and PCB in the amount of $3,675,000. The defendants oppose the motion. More specifically, Sage Growth argues that the parties reached an oral settlement agreement, and the defendants argue that the agreement was enforceable only once the written settlement agreement was executed, which never happened. The Court agrees with the defendants that there is a material dispute over whether a written agreement

**MEMORANDUM DECISION AND ORDER - 8**

was required.[1]

"A settlement agreement 'stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally.'" *Seward*, 426 P.3d at 1258 (quoting *Vanderford Co., Inc.*, 249 P.3d at 865). "Whether the parties to an oral agreement or stipulation become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent." *Kohring v. Robertson*, 44 P.3d 1149, 1154 (Idaho 2002). "An oral agreement is valid if the written draft is viewed by the parties as a mere record; the oral agreement is not valid if the parties view the written draft as a consummation of the negotiation." *Brunobuilt, Inc.*, 457 P.3d at 869.

Here, Sage Growth argues the former situation applies and the defendants insist that the latter does. "Whether the parties *intended* only to be bound upon the execution of a written, signed agreement is a factual issue." *Callie*, 829 F.2d at 890–91. "The intent of the parties to contract is determined by the surrounding facts and circumstances." *Seward*, 426 P.3d at 1259. To ascertain the intent of the

---

[1] The defendants also argue that the parties did not agree on all material terms of the agreement and that the payment of funds from a third-party investor was a condition precedent to performance. The Court will not address those arguments here because the dispute over the necessity of a written agreement prevents the Court from summarily enforcing the agreement. These arguments may be raised during the evidentiary hearing.

**MEMORANDUM DECISION AND ORDER - 9**

parties, Idaho courts consider:

> [W]hether the contract is one usually put in writing; whether there are few or many details; whether the amount involve is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated at the final conclusion of the negotiations.

*Lawrence v. Hutchinson*, 204 P.3d 532, 538 (Idaho Ct. App. 2009). To be sure, "[t]he best evidence to support the parties' intent to contract is to look at the words of counsel and their clients." *Seward*, 426 P.3d at 1259. "The burden of proof is on the party asserting that the contract was binding before the written draft was signed." *Intermountain Forest Management, Inc. v. Louisiana Pacific Corp.*, 31 P.3d 921, 925 (2001).

At the outset, both Sage Growth and the defendants point to defense counsel's May 31st email to support their position. That email states "this settlement will be embodied in a confidential settlement agreement which Sage will take the initial effort in drafting." Defs. Ex. M, Dkt. 77-15. Sage Growth reads this to mean that the writing would be a mere record of the oral agreement. The defendants, in contrast, read the e-mail to mean that the writing would be the consummation of the negotiation. Indeed, the email is susceptible to either interpretation and, therefore, does not conclusively resolve this dispute.

The same is true when the Court considers the conduct of the parties

**MEMORANDUM DECISION AND ORDER - 10**

following the May 31st email. On one hand, the defendants requested multiple extensions of the settlement payment deadline. Defs. Exs. T, U, Dkts. 77-22, 77-23. As Sage Growth points out, there would be no need to for an extension of any deadline if there was no enforceable agreement. Indeed, during these negotiations, counsel for Sage Growth consistently raised the possibility of moving to enforce the settlement agreement. *See* Defs. Ex. R (June 28, 2023 email informing defendants of intent to enforce the settlement agreement); Defs. Ex. U, Dkt. 77-23 (indicating the same in a July 14, 2023 email); Defs. Ex. V, Dkt. 77-24 (again on July 20, 2023). It is not clear from the emails between counsel whether the defendants shared this view.

On the other hand, the parties' negotiations can also support the defendants' position that a formal written agreement was required. For one, the defendants made clear that their ability to access settlement funds was contingent on a signed agreement. *See* Defs. Ex. K, Dkt. 77-13 ("[T]hese funds will not be made available to the group <u>unless and until</u> there is a written agreement between the parties. . ." (emphasis in original)); Defs. Ex. P, Dkt. 77-18 (". . . I am becoming concerned about the pace of the written settlement which is the necessary predicate to the settlement funds."). Because these funds were contingent on a written settlement agreement it reasonably follows that the parties understood that such a written

**MEMORANDUM DECISION AND ORDER - 11**

document was the consummation of the agreement—not a mere record of an agreement already reached.

The terms of the draft settlement agreement could be interpreted to suggest the same. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320. For instance, paragraph 21 of the draft agreement states that: "[t]he terms of the Agreement will be effective when an executed copy of the Agreement is delivered to said counsel for Sage Growth as described in paragraph 1 above." Ex. N, Dkt. 77-16; *see Ciaramella*, 131 F.3d at 324 (looking to effective date as defined in the proposed settlement agreement to determine whether parties intended to be bound before the agreement was signed). Similarly, the draft written agreement contains a merger provision stating the written agreement "constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof." *Id.* ("The presence of such a merger clause is persuasive evidence that the parties did not intend to be bound to prior to the execution of a written agreement.").

Moreover, the parties ongoing negotiations over the weeks following the May 31st call also support the defendants' argument that a formal writing was contemplated in order for the parties to be bound. Counsel for both the defendants

**MEMORANDUM DECISION AND ORDER - 12**

and Sage Growth indicated that their clients had not yet signed off on the drafts when they were shared and the parties disagreed, quite vehemently, over the terms of several provisions in the agreement. Defs. Ex. N, Dkt. 77-16; Defs. Ex. Q, Dkt. 77-19 (email from Sage Growth stating "[t]hose issues aren't negotiable for us.")). Taking the facts in the light most favorable to the defendants, as the Court must, a material dispute exists over whether there was an enforceable agreement. Sage Growth's motion to enforce the settlement agreement is denied. The Court will set an evidentiary hearing on this matter following the status conference with the parties.

## ORDER

**IT IS ORDERED that:**

1. Corina Burton's Motion to Strike (Dkt. 83) is **DENIED.**

2. Plaintiff's Motion to Enforce the Settlement Agreement (Dkt. 70) is **DENIED**.

3. An evidentiary hearing on the motion will be set by separate order.



DATED: September 12, 2025

_____
B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 13