UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAGE GROWTH CAPITAL FUND 1, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CPR CONSTRUCTION CLEANING, LLC, an Arizona limited liability company; CPR CONSTRUCTION CLEANING USA, LLC, an Arizona limited liability company; PCB HOLDINGS, LLC d/b/a CPR CONSTRUCTION CLEANING, an Arizona limited liability company; JOSEPH PATRICK MAEZ, an individual; CORINA BURTON, an individual; and BRENDA BURTON, an individual,<br><br>Defendants. | Case No. 1:22-cv-00237-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
| CORINA BURTON, an individual<br><br>Third-Party Plaintiff,<br><br>v.<br><br>CORNERSTONE FRANCHISE PARTNERS, LLC; SRC CONSTRUCTION CLEANING, LLC d/b/a CLEARSITE CONSTRUCTION SERVICES; RYAN COMBE; RYAN | |

MEMORANDUM DECISION & ORDER – 1

| |
|---|
| HICKS; and SECOND WIND CONSULTANTS, INC, |
| Third-Party Defendants. |
| CORINA BURTON, an individual |
| Cross-Claimant, |
| v. |
| CPR CONSTRUCTION CLEANING, LLC, an Arizona limited liability company; CPR CONSTRUCTION CLEANING USA, LLC, an Arizona limited liability company; and JOSEPH PATRICK MAEZ, an individual |
| Defendant. |

## INTRODUCTION

Before the Court are two motions to dismiss filed by the third-party defendants (Dkts. 94, 103) as well a motion to amend the third-party complaint filed by Corina Burton (Dkt. 92). For the reasons set forth below, the Court will grant both motions to dismiss and deny the motion to amend.

## BACKGROUND

The present motions stem from Corina Burton's third-party complaint against Cornerstone Franchise Partners, LLC, SRF Construction Cleaning, LLC

**MEMORANDUM DECISION & ORDER – 2**

d/b/a Clearsite Construction Services, Ryan Combe, and Ryan Hicks,[1] as well as Second Wind. Ms. Burton is one of several defendants in the underlying case, brought by Sage Growth which alleges numerous violations of state law. *Am. Compl.*, Dkt. 54. Those underlying claims are based upon a $400,000 loan made by Sage Growth to CPR Construction—a company owned by Corina Burton and Patrick Maez—based, in part, on misrepresentations made by the defendants. Dkt. 53. Those defendants never made loan payments as provided by the loan agreement and, instead, transferred CPR's assets to other entities (PCB Holdings and CPR USA) in order to avoid paying Sage Growth the amount due. *Id.*

In May 2022, Sage Growth filed its Complaint against CPR, Joseph Maez, and Corina Burton. *State Court Complaint*, Dkt. 1-2. In 2023, Sage Growth moved to amend the Complaint to add several defendants including Brenda Burton, PCB Holdings, and CPR USA as defendants as well as to add additional claims, including for fraudulent transfer. Dkt. 47. The Court granted that motion and Corina Burton filed her answer to the Amended Complaint as well as several cross-claims against her co-defendants and third party claims against Cornerstone, Clearsite, Mr. Combe, Mr. Hicks and Second Wind. Dkt. Dkt. 71. The third-party

---

[1] For clarity, the Court will refer to Cornerstone Franchise Partners, LLC, SRF Construction Cleaning, LLC d/b/a Clearsite Construction Services, Ryan Combe, and Ryan Hicks as the Cornerstone Defendants.

**MEMORANDUM DECISION & ORDER – 3**

defendants, in two separate motions, now move to dismiss the claims against them. Ms. Burton opposes both motions.

## LEGAL STANDARD

### A.   Motion to Dismiss

Second Wind moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and the Cornerstone Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when it pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Detailed factual allegations" are not required, but a plaintiff must offer "more than…unadorned, the-defendant-unlawfully-harmed-me accusations." *Id.* (cleaned up). That is, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts

MEMORANDUM DECISION & ORDER – 4

showing a causal link between the defendant and plaintiff's injury or damages. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The Court must dismiss a cause of action if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "On a Rule 12(b)(6) motion to dismiss, the court accepts the facts alleged in the complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1114 (9th Cir. 2022) (citations, quotations, and alteration omitted).

In contrast, on a motion to dismiss a complaint for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)). When "the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prime facie showing of jurisdictional facts to withstand a motion to dismiss." *Id.* (internal quotation marks and citations omitted). If the defendant offers evidence in support of the motion, the "plaintiff may not simply rest on the 'bare allegations of the complaint.'" *Id.* (cleaned up). Instead, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977) (citation omitted). That said,

**MEMORANDUM DECISION & ORDER – 5**

"uncontroverted allegations must be taken as true, and conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Ranza*, 793 F.3d at 1068 (citation omitted).

### B.     Motion to Amend

Motions to amend a pleading filed after a Case Management Order deadline has expired are governed not by the liberal amendment language of Rule 15(a) of the Federal Rules of Civil Procedure, but instead by the more restrictive provisions of Rule 16(b). *Johnson v. Mammoth Mountain*, 975 F.2d 604, 607–08 (9th Cir. 1992). "A party seeking to amend a pleading after the date specified in the scheduling order must first show good cause for amendment under Rule 16, then if good cause be shown, the party must demonstrate that amendment was proper under Rule 15." *Id*. at 608 (internal citations omitted).

Leave to amend under Rule 15 should be granted where "justice so requires." Fed. R. Civ. P. 15(a)(2). "In determining whether leave to amend is appropriate, the district court considers . . . four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Herring Networks, Inc. v. Maddow,* 8 F.4th 1148, 1161–62 (9th Cir. 1999). Generally, a court must make a determination "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

## ANALYSIS

MEMORANDUM DECISION & ORDER – 6

The Court will begin by addressing Second Wind's motion to dismiss before turning to the Cornerstone Defendants' motion to dismiss, and, finally, to Ms. Burton's motion to amend.

### A.    Second Wind's Motion to Dismiss

First, Second Wind moves to dismiss Ms. Burton's negligence claim, the sole claim against it, for failure to state a claim. More specifically, it argues that Ms. Burton has not properly alleged a third-party claim against Second Wind consistent with Federal Rule of Civil Procedure 14 because she does not adequately allege that Second Wind "is or may be liable to it for all or part of" Sage Growth's claim against Ms. Burton. Fed. R. Civ. P. 14(a)(1). The Court agrees.

A third-party claim under Rule 14 is appropriate "when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative." *United States v. One 1977 Mercedez Benz*, 708 F.2d 444, 452 (9th Cir. 1983). Importantly, "[i]t is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim." *Id.* Here, the sole third-party claim against Second Wind is for negligence based upon the advice it provided to Ms. Burton. This is not a derivative claim nor is it dependent on the outcome of Sage Growth's underlying claim. Ms. Burton does not allege any facts suggesting otherwise. For instance, a

**MEMORANDUM DECISION & ORDER – 7**

determination that no fraudulent transfer occurred does not necessarily resolve Ms. Burton's negligence claim against Second Wind. *C.f.*, *JP Express Serv., Inc. v. KG Admin. Servs.*, No. SACV 18-00134-CJC(RAOx), 2019 WL 8060074, at *6 (C.D. Cal. Nov. 5, 2019) ("Thus, if JP Express's underlying claim fails, then Third-Party Plaintiffs' claims against PeopLease [will] also fail because the relief they seek is wholly contingent upon the success of JP Express's claim."). Although Ms. Burton's negligence claim is certainly related to the underlying facts of this case, it is not dependent upon the outcome of any of Sage Growth's claims against Ms. Burton. As such, impleader is not appropriate, and the Court will grant the motion to dismiss the negligence claim against Second Wind without prejudice, but also without leave to amend.[2]

### B. Cornerstone Defendants' Motion to Dismiss

Next, the Cornerstone Defendants argue that this Court does not have personal jurisdiction over them. Where, as here, there is no applicable federal statute governing the exercise of personal jurisdiction over an out-of-state

---

[2] In dismissing the third-party claim against Second Wind without prejudice, but also without leave to amend, the Court is only precluding Ms. Burton from pursuing these claims as a third party claim under Rule 14. It does not intend to preclude Ms. Burton from pursuing her claims against Second Wind in a separate lawsuit or by using another procedural device in this case, such as joining Second Wind as an additional defendant on Ms. Burton's crossclaims against the co-defendants or a counterclaim against the plaintiff. Such a joinder is specifically allowed under the Federal Rules, but only in limited circumstances. Fed. R. Civ. P. 13(h). The Court offers no opinion as to whether such circumstances exist here.

defendant, the district court applies the law of the forum state. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The exercise of personal jurisdiction under the forum state must also be consistent with the Due Process Clause. *Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Idaho's long-arm status, codified at Idaho Code § 5-514, allows a broader assertion of personal jurisdiction than allowed under the Due Process Clause. *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1119 n.2 (D. Idaho 2009). Thus, under Idaho law, personal jurisdictional analysis and federal due process analysis are the same.

The exercise of personal jurisdiction over an out-of-state defendant complies with federal due process "only if he or she has certain minimum contacts with the relevant forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). "Applying the 'minimum contacts' analysis, a court may obtain either general or specific jurisdiction over a defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017). Here, Ms. Burton has not alleged any facts to suggest any of the Cornerstone Defendants are subject to general jurisdiction in Idaho. Cornerstone, Clearsite, and SRC are all incorporated in and have their principal place of business in Utah. *Combe Decl.* at

**MEMORANDUM DECISION & ORDER – 9**

¶¶ 6, 8, 9, Dkt. 103-2; *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 359 (2021). None of these corporations have any offices or employees in Idaho and are not owned by any Idaho residents. Mr. Combe is domiciled in Utah and Mr. Hicks is domiciled in Texas. *Combe Decl.* at ¶¶ 2, 4, Dkt. 103-2. Based on this record, the Court does not have general jurisdiction over any of the Cornerstone Defendants, so the only question is whether it has specific jurisdiction over them.

### 1. Specific Jurisdiction

A Court may exercise specific jurisdiction over a defendant when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). This "minimum contacts" inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted). The Ninth Circuit uses a three-part test to determine whether a court has specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Briskin v. Shopify, Inc.*, 135 F.4th 739, 750–51 (9th Cir. 2025) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden of demonstrating that the first two prongs of the test are met. *Id.* at 751. If the plaintiff succeeds, then the defendant "must present a compelling case" that exercising jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Under the first prong of the test, Ms. Burton must establish that the defendants purposefully availed themselves of the privilege of conducting activities in Idaho or purposefully directed their activities toward Idaho. *Schwarzenegger*, 374 F.3d at 802. Although related, purposeful availment and purposeful direction are "two distinct concepts." *Id.* "A purposeful availment analysis is most often used in suits sounding in contract" whereas "[a] purposeful direction analysis. . . is most often used in suits sounding in tort." *Id.* Ms. Burton argues the Court has personal jurisdiction over all of the Cornerstone defendants based upon the intentional interference with contract claim. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative facts' as the claim for which jurisdiction exists."). Because this claim sounds in tort, the Court will apply the purposeful direction analysis.

        *a.* Purposeful Direction

**MEMORANDUM DECISION & ORDER – 11**

The "purposeful direction" test, based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) causes harm that the defendant knows will be suffered in the forum state. *Briskin*, 135 F.4th at 751. At the outset, both the first and third elements of the *Calder* effects test are met. First, in this context, "intentional act" means "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. This standard mirrors the standard in tort law. Ms. Burton's allegations that the Cornerstone Defendants interfered with the settlement contract by engaging in negotiations and then, ultimately, purchasing CPR for less than initially discussed satisfies this standard. Second, the Cornerstone Defendants knew the interference would cause harm in Idaho because they knew that the settlement negotiations involved a lawsuit in Idaho. Dkt. 71 at ¶¶ 37–40.

The real issue here is whether the Cornerstone Defendants' conduct was "expressly aimed" at Idaho. "The 'expressly aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. Where, as here, the alleged tort is intentional interference with a contract, courts consider "whether [the defendant] expressly aimed such interference at [the forum state]." *Picot*, 780 F. 3d at 1214. The proper

**MEMORANDUM DECISION & ORDER – 12**

question for the personal jurisdiction analysis is "not where the plaintiff [or a third-party] experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277 290 (2014).

Here, the wrongful conduct, viewed broadly, was the Cornerstone Defendants' involvement in settlement negotiations and then backing out of the agreement. *Response* at 7–8, Dkt. 106. The conduct at issue involves Mr. Combe's and Mr. Hicks' communications with Mr. Maez and Ms. Burton about the sale of CPR. Those negotiations, in turn, related to the CPR Defendants' ongoing settlement discussions with Sage Growth because the CPR Defendants could not afford to settle this case without the sale of CPR. Importantly, however, all of the discussions about the sale of CPR—even to the extent it impacted the CPR Defendants' ability to settle this case—involved people and entities that resided outside of Idaho. The only alleged contact directly with an Idaho entity is a phone call between Mr. Coombe and Sage Growth. Dkt. 77-2 at ¶ 19. Moreover, the alleged harm to Ms. Burton, the third-party plaintiff, was suffered in Arizona, not Idaho. The Cornerstone Defendants have limited direct contacts with Idaho—one call with counsel for Sage Growth—and all other contact with Idaho was indirect as a result of their relationship with Ms. Burton.

**MEMORANDUM DECISION & ORDER – 13**

Both parties cite *Picot*, which the Court agrees dictates the outcome here. In *Picot*, Weston, Manos, and Picot entered into an oral agreement to develop and sell a new technology and share the profits from any sale. *Picot*, 780 F.3d at 1209. Weston appears to have been charged with developing the technology and, during the course of its development, travelled to California twice at Manos' and Picot's request. *Id.* at 1210. Manos and Picot ultimately agreed to sell the technology to the company, HMR. *Id.* The contract, executed in California, provided that the money from the sale of the technology would be paid into "two pass-through trusts" in Wyoming and Australia. *Id.* Manos and Picot did not pay Weston any share of the money from the sale, resulting, ultimately, in an attorney for Weston sending an email to Picot and Manos threatening to sue if Weston was not paid his share. *Id.* As a result of this email, HMR stopped making payments to Manos and Picot and the two sued Weston in California state court for intentional interference with contract. *Id.* The Ninth Circuit concluded that California federal courts did not have personal jurisdiction over Weston because his tortious conduct (making statements) took place outside California and caused an out-of-state company to stop making payments from out-of-state trusts to a California resident. *Id.* at 1215.

The same is true here. The Cornerstone Defendants' tortious conduct (making statements, withdrawing from agreement) took place outside of Idaho and caused out-of-state parties (the CPR Defendants) to breach the settlement

**MEMORANDUM DECISION & ORDER – 14**

agreement with Sage Growth which, ultimately, resulted in damage to Sage Growth, an Idaho corporation. As in *Picot*, these contacts are too attenuated to support the conclusion that the Cornerstone Defendants' conduct was "expressly aimed" at Idaho. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("The 'mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.' The relation between the defendant and the forum 'must arise out of contacts that the 'defendant himself' creates with the forum State." (internal citations omitted)).

  Indeed, the fact that it was foreseeable that the Cornerstone Defendants' conduct would result in injury in Idaho does not change this conclusion. "[T]he [Supreme] Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474. This conclusion is consistent with those reached by other district courts in the Ninth Circuit, which, "post-*Walden*. . . tend to decline jurisdiction in intentional interference cases when a plaintiff's only showing of express aiming is that the out-of-state defendant's extra-forum action caused harm to the plaintiff in the forum state." *GPMI Co. v. Michelin Lifestyle Ltd.*, No. CV-21-00299-PHX-GMS, 2022 WL 657352, at *4 (D. Ariz. Mar. 4, 2022) (collecting cases).

**MEMORANDUM DECISION & ORDER – 15**


Accordingly, the Cornerstone Defendants' motion to dismiss is granted without leave to amend.

### C.  Motion to Amend

Finally, Ms. Burton moves to amend her third-party complaint. In its motion to dismiss, the Cornerstone Defendants represent that SRC Construction Cleaning, LLC dba Clearsite Construction is not the proper party. *Cornerstone Defs. Motion* at 3 n. 2, Dkt. 103-1. In response, Ms. Burton has moved to dismiss SRC from this action and amend her Third-Party Complaint to add Clearsite Franchising LLC as the proper party. Leave to amend under Federal Rule of Civil Procedure should be granted where "justice so requires." Fed. R. Civ. P. 15(a)(2). "In determining whether leave to amend is appropriate, the district court considers . . . four factors: bad faith, undue delay, prejudice to the opposing party and/or futility." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1161–62 (9th Cir. 2021). Here, granting the motion is futile because the allegations against Clearsite are identical to those against SRC such that the Court would not have personal jurisdiction over Clearsite. Clearsite, like SRC, is a Utah limited liability company. Ex. 1, Dkt. 92-1. The only changes made to the proposed third-party complaint are to the name of the entity. As such, the Court's analysis above with respect to personal jurisdiction applies with equal force. Under these circumstances, the request to amend it futile and the Court will deny the motion.

## ORDER

**IT IS ORDERED that:**

1.  Second Wind's Motion to Dismiss (Dkt. 94) is **GRANTED**. The Third-Party claim against Second Wind is dismissed without prejudice and without leave to amend.

2.  The Cornerstone Defendants' Motion to Dismiss (Dkt. 103) is **GRANTED.** All Third-Party Claims against the Cornerstone Defendants are dismissed without prejudice and without leave to amend.

3.  Corina Burton's Motion to Amend (Dkt. 92) is **DENIED**.

DATED: September 12, 2025

_____
B. Lynn Winmill
U.S. District Court Judge