UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAGE GROWTH CAPITAL FUND 1, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CPR CONSTRUCTION CLEANING, LLC, an Arizona limited liability company; CPR CONSTRUCTION CLEANING USA, LLC, an Arizona limited liability company; PCB HOLDINGS, LLC d/b/a CPR CONSTRUCTION CLEANING, an Arizona limited liability company; JOSEPH PATRICK MAEZ, an individual; CORINA BURTON, an individual; and BRENDA BURTON, an individual,<br><br>Defendants.<br><br>CORINA BURTON, an individual,<br><br>Third-Party Plaintiff,<br><br>v.<br>CORNERSTONE FRANCHISE PARTNERS, LLC; SRC CONSTRUCTION CLEANING, LLC | Case No. 1:22-cv-00237-BLW<br><br>**AMENDED MEMORANDUM DECISION AND ORDER**[1] |

---

[1] This Amended Memorandum Decision and Order corrects a clerical error in the Order section of the original decision filed September 12, 2025, which erroneously stated "the Defendants' Motion to Dismiss (Dkt. 102) is GRANTED." The Order has been corrected to accurately reflect the Court's ruling granting Plaintiff Sage Growth Capital Fund 1 LLC's Renewed Motion for Leave to Seek Punitive Damages (Dkt. 102). This amended order is entered nunc pro tunc to September 12, 2025.

**MEMORANDUM DECISION & ORDER – 1**

d/b/a CLEARSITE CONSTRUCTION SERVICES; RYAN COMBE; RYAN HICKS; and SECOND WIND CONSULTANTS, INC,

       Third-Party Defendants.

CORINA BURTON, an individual,

       Cross-Claimant,

v.

CPR CONSTRUCTION CLEANING, LLC, an Arizona limited liability company; CPR CONSTRUCTION CLEANING USA, LLC, an Arizona limited liability company; and JOSEPH PATRICK MAEZ, an individual,

       Cross-Defendants.

# INTRODUCTION

    Before the Court is Plaintiff Sage Growth Capital Fund 1, LLC's Renewed Motion for Leave to Seek Punitive Damages against defendants.[2] Dkt. 102. For the reasons set forth below, the Court will grant the motion.

---

[2] Sage Growth's renewed motion did not seek punitive damages against Joseph Maez because the case against him was stayed at the time the renewed motion was filed. The stay has since lifted, so the Court will treat the renewed motion as including a request to seek punitive damages against Mr. Maez because Sage Growth's original motion made such a request. Dkt. 47.

**MEMORANDUM DECISION & ORDER – 2**

# BACKGROUND

The Court has previously set forth the relevant factual background in its Memorandum Decision and Order on Sage Growth's original motion to amend. Dkt. 53. In short, Sage Growth alleges that it loaned $400,000 to CPR Construction, LLC ("CPR") in December 2021. *Id.* CPR was founded by Patrick Maez and Corina Burton to provide construction cleaning services. *Id.* Corina's mother-in-law, Brenda Burton, worked as a bookkeeper for CPR. *Id.* Due to the nature of the construction cleaning business, CPR found itself in financial trouble in 2021 because it owed $387,000 to two of its subcontractors—Verde Clean, LLC and Verde Facilities. *Id.* In November 2021, the Verde entities threatened to sue, prompting CPR to look for investors. *Id.*

It applied for a loan from Sage Growth but failed to disclose either the threatened litigation or the Verde debt to Sage Growth. *Id.* With the information provided by CPR, Sage Growth agreed to loan CPR $400,000. *Id.* CPR never made a payment towards the loan. *Id.* Instead, it transferred all of CPR's assets to PCB Holdings, owned by Brenda, and CPR Construction Cleaning USA, LLC ("CPR USA"), and continued doing business under CPR's trade name. *Id.*

Sage Growth filed the present lawsuit in May 2022. It filed a motion to amend in September 2023, which the Court granted in part, but deferred ruling on the request to add punitive damages until the Idaho Supreme Court issued its opinion in *Davis v. Blast Properties, Inc.*, No. 50491-2023 (Idaho 2023). The Idaho Supreme Court has issued that

opinion and Sage Growth now renews its motion to amend its Complaint to seek punitive damages against all of the defendants.

## LEGAL STANDARD

Because the Court is sitting in diversity, Sage Growth's motion for leave to amend to allege punitive damages is governed by Idaho Code § 6-1604. At the pleading stage, a plaintiff may not claim punitive damages in their initial complaint. Instead, upon a pretrial motion, the plaintiff must seek to "amend the pleadings to include a prayer for relief seeking punitive damages." Idaho Code § 6-1604(2). The Court, in turn, can permit such an amendment only if, "after weighing the evidence presented, the court concludes that the moving party has established . . . a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *Id*.

In other words, the Court should only grant a motion to amend to add punitive damages when there is "a 'reasonable probability' that the evidence submitted is: (1) admissible at trial; and (2) 'sufficient' to support an award of punitive damages." *Davis v. Blast Properties, Inc.*, 551 P.3d 706, 712 (Idaho 2024). In this context, "'sufficient' means that the claim giving rise to the request for punitive damages must be legally cognizable and the evidence presented must be substantial." *Id.*

When considering the sufficiency of the evidence, courts apply a standard that is, essentially, "the inverse of Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of law." *Davis v. Blast*, No. 1:21-cv-00218, 2023 WL 1767311, at

*3 (D. Idaho Feb. 3, 2023). Under Rule 50, courts view all evidence in the light most favorable to the non-movant and simply ask whether a reasonable jury could find in the non-movant's favor. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).

Similarly, but in the inverse, under section 6-1604(2), courts view all evidence in the light most favorable to the movant and give the movant the benefit of all legitimate inferences. In doing so, courts do not assess credibility or resolve any disputes of fact. Rather, so long as the movant shows that a reasonable jury could find clear and convincing evidence supporting punitive damages, courts allow the movant to seek punitive damages. Ultimately, the decision whether to permit a plaintiff to add a claim for punitive damages "rests within the sound discretion of the trial court." *Groenig v. Safeco Ins. Co. of Am.*, No. 1:20-cv-00538-BLW, 2023 WL 6162937, at *10 (D. Idaho Sept. 21, 2023) (citing *Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.2d 1185, 1190 (Idaho 1992)).

## ANALYSIS

Sage Growth argues punitive damages are appropriate because the defendants defrauded Sage Growth by falsifying financial statements, lying about their intended use of the investment proceeds, and moving assets to avoid accountability. The Court agrees that the record is sufficient to permit such a claim.

To seek punitive damages, a plaintiff must present substantial evidence of

"oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." Idaho Code § 6-1604(1). That means showing "the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC*, 191 P.3d 196, 201 (Idaho 2008). A bad act is an "extreme deviation from reasonable standards of conduct." *Seiniger Law Officer, P.A. v. North Pac. Ins. Co.*, 178 P.3d 606, 615 (Idaho 2008). That said, "[i]t is well established in this state that punitive damages may be awarded when the defendant has committed fraud." *Umphrey v. Sprinkel*, 682 P.2d 1247, 1257 (Idaho 1983). As this Court has previously explained, "a plaintiff who is reasonably likely to prove facts sufficient for a jury to find fraud by clear and convincing evidence may seek punitive damages." *Davis*, 2023 WL 1767311, at *7. There is no need to make the additional showing of bad act and bad state of mind. *Id*.

Put simply, Sage Growth alleges the defendants defrauded Sage Growth by submitting falsified financial records that omitted the $387,000 owed to the Verde Entities and lying to Sage Growth about how they intended to use the loan. Dkt. 47-19. Mr. Maez, via email, told Sage Growth they "plan[ned] to use the $400,000 for operating expenses to help keep up with growth over the next 60-90 days." *Id*.

Despite this representation to Sage Growth, the defendants knew that they intended to use the money from Sage Growth to pay Verde. Dkt. 47-21. Indeed, the defendants never made a single payment to Sage Growth, nor, seemingly, planned to make a single payment. Dkt. 47-5 at 272:19–21; Dkt. 47-12 at 24:24–25:7. Instead, the defendants

MEMORANDUM DECISION & ORDER – 6

transferred all of CPR's assets to PCB Holdings and CPR USA in order to continue CPR's business without repaying Sage Growth. Dkt. 47-1 at 11–13. The evidence submitted is certainly sufficient for Sage Growth to amend to seek punitive damages against CPR, Patrick, and CPR USA—none of whom oppose the motion.

On the other hand, Corina, Brenda, and PCB all argue that punitive damages are unwarranted because Sage Growth has not submitted sufficient evidence. The Court disagrees, but will address each of defendants' arguments separately, beginning with Corina.

### A.   Corina Burton

Corina argues that she did not have the requisite "bad state of mind" to impose punitive damages because she played no role in the creation or submission of the financial documents to Sage Growth. She claims she did not know that the Verde debt was removed from the books before the financial statements were submitted to Sage Growth. *See* Corina Ex. 2 at 199:19 -200:11, Dkt. 105-2; Corina Ex. 3 at 199:14–200:21, Dkt. 105-3. Indeed, the email from Brenda to Patrick asking if there will be issues with Sage Growth if CPR uses the loan to pay off Verde does not include Corina, despite her inclusion in the preceding email. Dkt. 47-21. While this evidence may support Corina's claim that she knew nothing about the removal of the Verde debt, it could just as easily support the reasonable inference that Brenda unintentionally dropped Corina from the thread when replying to Patrick. As such, this argument does not resolve the motion in

MEMORANDUM DECISION & ORDER – 7

Corina's favor.

Next, Corina argues that her lack of involvement with preparing the pitch material for Sage Growth precludes any finding that she committed a bad act. Sage Growth, in contrast, argues Corina knew or should have known that the submitted material misrepresented the financial state of the company. More specifically, it argues she was aware of CPR's debt and that the Verde Entities were moving forward with the lawsuit and that CPR was seeking investment from Sage Growth to repay the Verde Entities. Dkts. 47-16, 47-2. She also knew that CPR, through Patrick, had represented to Sage Growth that it intended to use the loan for future operating expenses. Dkt. 47-19. Finally, Sage Growth argues she knew, or at least should have known, that CPR's financial statements omitted the Verde debt because she was copied on the email submitting the statements to Sage Growth. Dkt. 47-4. Despite this knowledge, Corina signed a contract representing that CPR's representations and warranties were true and correct (including there was no threatened litigation against CPR and that the submitted material accurately represented CPR's financial condition). Dkt. 47-4.

The signing of the contract, including making the representations and warranties therein, constitutes a bad act. The fact that Corina knew the representations were false or did not know if they were true, is sufficient to demonstrate a bad state of mind. As the Idaho Supreme Court recently affirmed, "[c]lear and convincing evidence of fraudulent misconduct will support an award of punitive damages." *Davis*, 551 P.3d at 711; *see also*

**MEMORANDUM DECISION & ORDER – 8**

*Myers v. Workmen's Auto. Ins. Co.*, 95 P.3d 977, 983 (Idaho 2004) (a plaintiff must establish "a reasonable likelihood she could prove. . . that [the defendant] acted oppressively, *fraudulently*, wantonly, maliciously or outrageously." (emphasis added)). Determining whether Corina acted fraudulently is ultimately a factual dispute that turns, in large part, on Corina's credibility. The Court is not to make such determinations at this stage, rather it need only consider whether, taking all evidence in the light most favorable to the moving party, a reasonable jury could find that Corina acted fraudulently. The Court agrees with Sage Growth that a reasonable jury could so find.

### B.   Brenda Burton

Next, Brenda argues that Sage Growth has not demonstrated a reasonable likelihood that a jury would award punitive damages against her. She points to the fact that she was not a signatory to any agreement with Sage Growth and was not even an employee of Sage Growth at the time of the underlying events. She also argues Patrick removed the Verde debt from the books, not her. Indeed, she argues her only involvement "was print[ing] and provid[ing] the reports from the QuickBooks files for Patrick's submission to Sage Growth." Dkt. 104.

This narrative is subject to dispute. Patrick testified that Brenda removed the accounts payable owed to the Verde Entities when CPR started looking for investors. Dkt. 47-6 at 69:9–70:11. Even setting aside this factual question of who removed the debt from the books, Brenda testified that she was aware that Patrick kept the accounts

MEMORANDUM DECISION & ORDER – 9

payable owed to the Verde Entities in a separate spreadsheet. Dkt. 47-12 at 190:1–25. Despite this knowledge, she prepared CPR's financial statements for submission to Sage Growth knowing that the statements did not reflect the debt and knowing that Sage Growth would rely on the financial statements. Dkt. 47-20. Moreover, Brenda knew Sage Growth was unaware of the Verde debt and knew that CPR planned to use the loan to pay off that debt. Dkt. 47-21. This evidence is sufficient for a reasonable jury to impose punitive damages.

### C.     PCB

Finally, PCB argues that Sage Growth has not presented any evidence that would support the imposition of punitive damages. The Court is, again, not convinced. All parties appear to agree that PCB "essentially carried on business as CPR." Dkt. 105 at 7; Dkt. 47-5; Dkt. 47-23. It used CPR's trade name and branding, including logo, uniforms, website, social media, and email addresses. Dkt. 47-24; Dkt. 47-23 at 40:18–42:16, 179:3–180:6; Dkt. 47-5 at 263:7–266:3.

Brenda downloaded CPR's customer list and vendor list and then emailed all of CPR's customers to ask them to update their contracts with CPR to reflect PCB's information. Dkt. 47-12 at 115:5–22; Dkt. 47-26. Patrick, similarly, emailed a CPR customer list to himself and asked customers to update contracts with CPR to PCB. Dkt. 47-10. Based on the evidence submitted by Sage Growth, the Court has no trouble concluding that PCB furthered CPR's and the other defendants' fraud and, as such, there

is a reasonable likelihood that a jury would impose punitive damages.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff Sage Growth Capital Fund 1, LLC's Renewed Motion for Leave to Seek Punitive Damages (Dkt. 102) is **GRANTED**. Sage Growth shall file an Amended Complaint within 14 days of the issuance of this order.

2. This Amended Order is entered nunc pro tunc to September 12, 2025.

DATED: October 15, 2025

B. Lynn Winmill
U.S. District Court Judge